IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FRANKLIN CURT CLINE                                                                    PLAINTIFF

v.                                          NO. 4:10CV01999 HDY

MICHAEL J. ASTRUE,                                                                     DEFENDANT
Commissioner of the Social
Security Administration

MEMORANDUM OPINION AND ORDER

BACKGROUND. In October of 2008, plaintiff Franklin Curt Cline ("Cline") commenced the administrative portion of this case by filing applications for disability insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). His applications were denied initially and upon reconsideration, after which he requested, and received, a de novo hearing before an Administrative Law Judge ("ALJ"). In January of 2010, the ALJ issued a decision adverse to Cline, and he appealed. The Appeals Council denied his request for review, and the ALJ's decision became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Cline then commenced the judicial portion of this case by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the Commissioner's final decision.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. It requires the Court to consider the weight of the evidence in the record and apply a balancing test to evidence which is contrary. See Heino v. Astrue, 578 F.3d 873 (8th Cir. 2009).

THE ALJ'S FINDINGS. The ALJ made findings pursuant to the five step sequential evaluation process. At step one, he found that Cline has not engaged in substantial gainful activity since September 5, 2008, the alleged onset date. At step two, the ALJ found that Cline has the following severe impairments: "degenerative disc disease of the cervical spine, obesity, hypertension, hyperthyroidism, and [a] history of myocardial infarction ..." See Transcript at 11. At step three, the ALJ found that Cline does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations. The ALJ then assessed Cline's residual functional capacity and found that he can perform "slightly less than the full range of sedentary work ..." See Transcript at 13. At step four, the ALJ found that Cline is unable to perform his past relevant work as a truck driver. At step five, the ALJ found that considering Cline's residual functional capacity, age, education, and work experience in conjunction with the testimony of a vocational expert, jobs exist in significant numbers in the national economy that Cline can perform, namely, "surveillance system monitor," "charge account clerk," and "escort vehicle driver." See Transcript at 16. Accordingly, the ALJ found that Cline has not been under a disability as defined by the Act from September 5, 2008, through the date of the ALJ's decision.

CLINE'S ASSERTIONS OF ERROR. Are the ALJ's findings supported by substantial evidence on the record as a whole? Cline thinks not and advances the following reasons why: 1) the ALJ failed to consider, and failed to fully develop the record with regard to, all of Cline's impairments; 2) Cline's subjective complaints of pain were not properly considered; and 3) his residual functional capacity was not properly assessed.

CLINE'S IMPAIRMENTS. Cline first maintains that the ALJ failed to consider, and failed to fully develop the record with regard to, all of Cline's impairments. He maintains that his bipolar disorder, adjustment disorder, and "meralgia paresthetica" were not considered by the ALJ.[1] With specific regard to whether the record was fully developed as to "meralgia paresthetica," Cline maintains that the ALJ had some question about the diagnosis but he chose to ignore the offer made by Cline's attorney to substantiate the diagnosis.

The ALJ has an obligation to fully develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). There is no bright line test for determining whether the ALJ fully developed the record; the determination is made on a case by case basis. See Id. It involves examining whether the record contains sufficient information for the ALJ to have made an informed decision. See Pratt v. Asture, 372 Fed.Appx. 681 (8th Cir. 2010).

---

[1] A bipolar disorder, historically known as manic-depressive disorder, is defined by episodes of abnormally elevated energy levels, cognition, or moods sometimes accompanied by depressive episodes. An adjustment disorder is a psychological response to an identifiable stressor that causes significant emotional or behavior symptoms that do not meet the criteria for an anxiety disorder. "Meralgia paresthetica" is numbness or pain in the outer thigh not caused by an injury to the thigh but by an injury to a nerve that extends from the thigh to the spinal column.

At step two, the ALJ must identify the claimant's impairments and determine whether they are severe. An impairment is severe if it has "more than a minimal effect on the claimant's ability to work." See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) [internal quotation omitted]. At step three, the ALJ must determine whether the impairments, when considered individually and in combination, meet or equal a listed impairment. See Raney v. Barnhart, 396 F.3d 1007 (8th Cir. 2005). The determinations at steps two and three are strictly medical determinations. See Bowen v. Yuckert, 482 U.S. 137 (1987) (step two); Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990) (step three).

At step two, the ALJ identified Cline's severe impairments, none of which are a bipolar disorder, adjustment disorder, or "meralgia paresthetica." The ALJ noted that although Cline had been diagnosed with a bipolar disorder, it does not cause "more than minimal limitation in [his] ability to perform basic mental work activities and is therefore not severe." See Transcript at 11. The ALJ noted that although Cline had been diagnosed with an adjustment disorder with mixed emotional features, it is not severe because it causes "no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area." See Transcript at 12. The ALJ also noted that Cline had been diagnosed with "meralgia paresthetica." See Transcript at 14. Although the ALJ made no specific finding as to its severity, it is obvious he found that it is not severe. At step three, the ALJ appears to have considered all of Cline's impairments in finding that they, both individually and collectively, do not meet or equal a listed impairment.

-4-

Substantial evidence on the record as a whole supports the ALJ's treatment of Cline's bipolar disorder, adjustment disorder, and "meralgia paresthetica." With regard to his bipolar disorder, the diagnosis, which is oftentimes couched in qualified terms, is supported by little medical evidence and gives rise to no restrictions. The record reflects that Dr. John Price ("Price"), the physician who made the diagnosis, saw Cline in October of 2007 and noted that he was "almost bipolar in nature …" and prescribed Zyprexa. See Transcript at 261. Price did not impose any restrictions at that time nor at any time thereafter. He saw Cline in November of 2007 and diagnosed him with "probable bipolar disease as it runs in his family." See Transcript at 259. When Price saw Cline again in December of 2007, Price diagnosed Cline with "probable bipolar disease" but noted that he was doing "fairly well except he is still quite anxious during the day." See Transcript at 254. Price saw Cline again in January of 2008 and appears to have developed some question about the diagnosis as Price noted the following:

> … [Cline] is a 35-year-old gentleman who I cleared to go back to work. He is on Zyprexa for what I thought was bipolar disease and he seemed to be responding to the medication. Apparently went to Concentra to a DOT doctor and he would not allow him to drive on that medication without a psychiatrist evaluation. Patient comes in needing help with that.

See Transcript at 250.[2] In February of 2008, Cline was seen by Dr. James Sims ("Sims") for a psychiatric evaluation. Sims made the following findings:

---

[2] Price saw Cline in October of 2008 and again diagnosed him with a bipolar disorder.

> ... [Cline's] doctor talked to him and reportedly diagnosed him as having Bipolar Disorder and started him on some ZYPREXA. He said that helped calm him down and he slept better. However, he could not take it and drive so he's been off work for several months now and, of course, that's put additional strain on him financially. ... He says his insurance wouldn't pay for it so he had to quit taking the ZYPREXA a month or so ago. He can't really tell any difference without it. On interview, he denies anything that sounds like a manic episode ever in his life.

See Transcript at 192. Sims did not impose any restrictions at that time. Notwithstanding the lack of medical evidence to support the diagnosis, the ALJ could and did accept that Cline suffers from a bipolar disorder. The ALJ could and did properly find, though, that it causes no more than minimal limitation and is not severe.[3]

With regard to Cline's adjustment disorder, the diagnosis is supported by little medical evidence, gives rise to no restrictions, and does not meet the Paragraph "B" criteria for evaluating such disorders. The record reflects that Sims, the physician who made the diagnosis, saw Cline in February of 2008 and made the following findings:

> ... [Cline] denies any significant depression, although he ... says he sometimes gets sad and doesn't feel like doing anything for a few hours at a time. He generally, however, talks himself out of that and gets up and does whatever he needs to do. ... The one problem area he sees is that he tends to worry a lot about problems such as finances and sometimes gets very angry very easily. ... Affect was appropriate with no signs of expansive nor subdued depressed mood.
> Diagnosis: Adjustment Disorder with Mixed Emotional Features Resolving.

---

[3] Cline has not shown that the impairment causes more than mild limitations in the first three functional areas of Paragraph "B" nor has he shown episodes of decompensation of an extended duration. In addition, he has not shown how the ALJ failed to fully develop the record as to the impairment. The ALJ appears to have considered the impairment in finding at step three that Cline's impairment, or combination of impairments, do not meet or equal a listed impairment.

> I told him I did not think he needed any psychiatric treatment. If he needed anything to help him sleep on an occasional basis that he could get that through his family doctor. To help deal with the anger, I told him to find physical ways to release his anger such as sports or physical work activities.
> …

See Transcript at 192. Sims did not impose any restrictions at that time. Using the Paragraph "B" criteria, Cline's activities of daily living reflect that he not only cares for his own needs but he also helps care for the needs of others, shops, manages his money, and plays with his children. See Transcript at 47-48, 140-144. Any restriction in his daily activities appears to be due more to some degree of pain than an adjustment disorder. As to Cline's social functioning, he attends church and has no problem getting along with others. See Transcript at 144-45. As to his concentration, persistence, or pace, and episodes of decompensation, there is simply no evidence that he experiences any significant limitation in those areas. Notwithstanding the lack of medical evidence to support the diagnosis, the ALJ could and did accept that Cline suffers from an adjustment disorder. The ALJ could and did properly find, though, that it is not severe.[4]

With regard to Cline's "meralgia paresthetica," the diagnosis is supported by little medical evidence and gives rise to no restrictions. The record reflects that Dr. Richard Jordan ("Jordan"), the physician who made the diagnosis, saw Cline in January of 2008 and made the following findings:

---

[4] Cline has not shown how the ALJ failed to fully develop the record as to the impairment.

> Mr. Cline was seen in my office for a consult on 1-2-08, with complaints of neck and low back pain. MRI results of his cervical spine showed a small herniated disc at C6-7, nothing that requires surgery. There were no studies of his lumbar spine obtained. He was diagnosed with meralgia paresthetica and given samples of Lyrica 75 mg. Mr. Cline ... called back and reported that the Lyrica was beneficial.
>
> Mr. Cline was receiving assistance from Helping Hands for his medication, but due to the high cost of Lyrica his assistance was stopped. We have provided him with samples on several occasions until his disability hearing.

See Transcript at 283. Jordan did not impose any restrictions at that time. Notwithstanding the lack of medical evidence to support the diagnosis, the ALJ could and did accept that Cline suffers from "meralgia paresthetica." The ALJ could and apparently did find, though, that it is not severe as it has no more than a minimal effect on his ability to work.

Cline maintains that the record was not fully developed with regard to his "meralgia paresthetica." He maintains that the ALJ had some question about the diagnosis but he chose to ignore the offer made by Cline's attorney to substantiate the diagnosis. The record reflects that the ALJ discussed Jordan's diagnosis with Cline and his attorney. See Transcript at 49-50. The Court is satisfied that the record contains sufficient information for the ALJ to have made an informed decision as to the severity of the impairment. The record contains Jordan's diagnosis, see Transcript at 283, and notes in which Cline's complaints of back and leg pain were duly noted and that "both legs become numb after about [ten] minutes," see Transcript at 276, all of which the ALJ considered. Cline has not identified the documents the ALJ failed to consider.

CLINE'S SUBJECTIVE COMPLAINTS. Cline next maintains that his subjective complaints of pain were not properly considered. He maintains that his work record, the medical evidence, and the medication he takes "simply do not provide a basis for the ALJ to [have discounted his] allegations of pain as it related to [his] residual functional capacity …" See Document 10 at 12.

In Pearsall v. Massanari, 274 F.3d 1211, 1217-1218 (8th Cir. 2001), the Court of Appeals stated the following regarding the proper evaluation of a claimant's subjective complaints of pain:

> … the ALJ must consider, in addition to objective medical evidence, any evidence relating to: a claimant's daily activities; [the] duration, frequency and intensity of pain; [the] dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. See Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984). Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. Id. at 1322. … The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts. …

The ALJ need not discuss each factor but only need acknowledge and consider them before discounting subjective complaints of pain. See Eichelberger v. Barnhart, 390 F.3d 584 (8th Cir. 2004).

The ALJ considered Cline's subjective complaints of pain in accordance with the factors identified in Polaski v. Heckler. See Transcript at 14-15. In doing so, the ALJ considered both the medical and non-medical evidence. With regard to the former, he found the following:

> ... It must first be noted that the medical findings that are present are not consistent with the disabling level of pain alleged by [Cline]. As noted above, an MRI of [his] cervical spine showed a herniated disc at C6-7. However, there was no nerve root compression or other spinal abnormality noted. X-rays of [his] lumbar spine have been reported as normal. Certainly his allegations cannot be disregarded on this basis, but this is a factor which must be considered. ...

See Transcript at 14-15. The ALJ also considered the non-medical evidence, which he found did not support Cline's assertion of disabling pain.[5] Accordingly, the ALJ found that Cline does not experience pain to the extent he alleged.

---

[5]

With regard to the non-medical evidence, the ALJ found the following:

> The fact that [Cline] may have some level of discomfort was given due consideration in reaching the finding that he would be limited to sedentary work activity.
>
> With regard to aggravating factors and functional limitations, [Cline] testified that he can only lift 5 pounds, sit for about 30 minutes, and walk about 50 yards. He further testified that Dr. Jordan told him not lift more than 5 pounds due to a danger of rupturing a disc. However, it does not appear that any physician has placed this level of limitation upon [him]. There is no indication that Dr. Jordan gave any physical limitation.
>
> [Cline] reported in Exhibit 3-E that he was unable to perform most daily activities due to severe pain. He testified that he could fold clothes and wash a few dishes, but did not clean the house or take care of the yard work. However, [he] also reported that he receives unemployment insurance and is actively looking for work. This indicates that he is portraying himself as ready and able to perform work activity.
>
> The record indicates that [Cline's] back pain has been treated only on a conservative basis, with no surgery or other invasive treatment recommended. Allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment or has taken medications, other than aspirin, for pain only on an occasional basis. ...
>
> Frequency and type of medication and treatment are factors to be considered in credibility determination[s]. ... The record indicates that [Cline's] alleged disabling pain is treated with over the counter pain medication, and Lyrica. He has not been referred to a pain management clinic and receives no physical therapy.

See Transcript at 15.

Substantial evidence on the record as a whole supports the ALJ's treatment of Cline's subjective complaints of pain. The ALJ clearly recognized his obligation to apply the factors identified in Polaski v. Heckler, and he applied them in an appropriate manner. He properly considered the medical evidence, which primarily reflects that Cline experiences back problems caused by degenerative disc disease, see Transcript at 179-190, and/or a fall he took in January of 2004, see Transcript at 184. The ALJ could and did find that those problems give rise to some degree of pain. He also properly considered the non-medical evidence. He considered Cline's daily activities, which indicate that he not only cares for his own needs but he also helps care for the needs of others, shops, manages his money, and plays with his children. See Transcript at 47-48, 140-144. The ALJ also properly considered the fact that Cline attempted to find work after the alleged onset date and was drawing unemployment benefits on the date of the administrative hearing.[6] The ALJ also considered Cline's pain medication, which, save

---

[6] Cline specifically testified to the following regarding those matters:

    Q. Have you worked anywhere since [September 5, 2008, the alleged onset date]?

    A. No, sir. I tried, tried to get a job at Wal-Mart.

    Q. Okay. Did – when you say you tried, did you try to get a job or did you try to get a job and try to work?

    A. Well, they hired me. I went through everything, the orientation and all that. I went in to do the drug screen and when my medication showed up on the drug screen I had to answer some basic questions about it. And because of the bipolar medicine that I take and the Lyrica, which makes me drowsy and really kind of moody, they told me because, and because of my back already being hurt that I would be a liability, so they wouldn't be able to hire me.

over-the-counter medication, is limited to Lyrica. See Transcript at 42, 137, 157, 202. The ALJ also considered aggravating factors and functional limitations, including the lack of any evidence to support Cline's assertion that a physician had imposed a five pound limit on his lifting ability. See Transcript at 44.

It is true that the ALJ did not give any consideration to Cline's work history. The ALJ's failure to do so does not warrant a remand. A claimant's work history is just one factor to consider in evaluating his subjective complaints of pain, and Cline's work history is capable of more than one characterization. See Transcript at 116.

It is also true that the ALJ did not give any consideration to Cline's inability to pay for medical treatment. The ALJ's failure to do so does not warrant a remand. There is no showing that Cline has been completely unable to obtain any such treatment.

---

…

Q. Okay. What are you doing for income now?

A. Right now I'm living with my mom and dad. They're basically paying for me and my son. Right now I draw unemployment of 306 right now a week, which I've been drawing it for almost my full year. Come the end of this month it runs out.

…

Q. [As] part of your unemployment benefit[s], are you required to look for work?

A. Yes, sir.

Q. And are you looking for work?

A. Been looking every day. I, like I said I get as far as drug screens and it's about as far as I get on anything that I do. …

See Transcript at 31-32.

The ALJ is charged with the obligation of assessing credibility, and Cline has offered no legitimate reason for questioning the ALJ's assessment. The characterization of the evidence made by him in light of the Polaski v. Heckler factors is one of the acceptable characterizations. Thus, there is no error.

CLINE'S RESIDUAL FUNCTIONAL CAPACITY. Cline last maintains that his residual functional capacity was not properly assessed. He maintains that he cannot perform the exertional demands of "slightly less than the full range of sedentary work" and focuses his assertion primarily upon the finding that he can lift and carry ten pounds occasionally and less than ten pounds frequently.

Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses [the person's] ability to function in the workplace." See Id. at 539.

The ALJ considered both the medical and non-medical evidence in assessing Cline's residual functional capacity. The ALJ found that Cline is capable of performing "slightly less than the full range of sedentary work," i.e., he can lift and carry/push and pull ten pound occasionally and less than ten pounds frequently; can stand and walk for two hours in an eight hour workday; can sit for six hours in an eight hour workday; and can occasionally stoop, kneel, crouch, and crawl but can never climb.

Substantial evidence on the record as a whole supports the ALJ's assessment of Cline's residual functional capacity. The ALJ properly considered the medical evidence, which primarily reflects that Cline experiences back problems caused by degenerative disc disease and/or a fall he took in January of 2004. Although there is evidence of other impairments, e.g., obesity, hypertension, hyperthyroidism, and a history of myocardial infarction, they are either controlled by medication or present no on-going complications. Cline testified that Jordan had advised against lifting or carrying more than five pounds at a time as lifting or carrying any greater weight would "rupture those disks completely." See Transcript at 44. The record is devoid, though, of any such restriction, be it from Jordan or any other physician. Jordan's notes certainly do not reflect a five pound restriction on lifting and carrying, see Transcript 181, 276, 283, and the only restriction of any kind made by any physician is one made by Dr. Cynthia Almond, who in January of 2004 restricted Cline's lifting and pushing/pulling to ten pounds. See Transcript at 185. Cline also testified that he cannot stand for more than ten minutes before he must sit and can only sit for thirty minutes before he must stand. See Transcript at 45-46. The medical evidence certainly does not substantiate his assertions. Jordan found that Cline suffers from a "small herniated disc," see Transcript at 283, and the ALJ clearly took that impairment into account in assessing Cline's residual functional capacity. In sum, there is nothing in the medical evidence that contravenes the ALJ's assessment of Cline's residual functional capacity.

The ALJ also properly considered the non-medical evidence, including evidence that shed light on the credibility of Cline's subjective complaints of pain. The Court will not repeat in full the analysis of his subjective complaints, except to note that the ALJ could and did properly question the degree of pain experienced by Cline. In sum, there is nothing in the non-medical evidence that contravenes the ALJ's assessment of Cline's residual functional capacity.

CONCLUSION. There is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Cline's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this ___13___ day of October, 2011.

UNITED STATES MAGISTRATE JUDGE